Good morning, Your Honors. Good morning. Good morning. I am Janice Cleveland. I represent the plaintiff appellant, Susan Lee Barker, and I would like to reserve a few minutes for rebuttal. You've been here before, haven't you? You've been here before? I have never been here before, no. Haven't you? First time. I'm always looking for repeat customers, you know. The issue in the case is does the plaintiff, Barker, have standing to sue her employer, Riverside County Office of Education, for retaliation for engaging in a protected activity under Section 504 of the Rehabilitation Act and Title II of the American Disabilities Act and both statutes' anti-retaliation regulations. The lower court dismissed the case. It is our position that the plaintiff advocated for her disabled students, and these students were the beneficiaries of both statutes and the regulations. She was retaliated against, and, therefore, it's our position that she has standing to sue under these anti-retaliation regulations, as that's the whole purpose of the regulations. I'd like to discuss Section 504 of the Rehabilitation Act first. Before you do that, let me just ask a question. As you know, we're bound to follow Ninth Circuit law. Yes. And the only Ninth Circuit cases you cited in your brief that are relevant to the Rehabilitation Act are Zolan and Settlegood. Why did these cases support your argument? Zolan was probably about associational standing, and in Settlegood, we did not even address the standing. I understand that. I think we are before you. Zolan was association standing, and they just used the language as to that standing is very broad, but the fact pattern is not the same. And in Settlegood, there was that footnote that stated that, you know, you conferred liability for Section 504 for this lady, but standing wasn't before you. So we're really in a void here. So we have to, this is, we need a written decision. If you look into other circuits, other circuits have conferred standing, and then there are four cases, going back all the way to 1981, with the identical fact pattern that confer standing to teachers, special education teachers, who retaliate for their students, who advocate for their students, and then are retaliated against. All right, Alice, this is your first time here. I'm going to offer my own opinion about your brief. You cite all these out-of-circuit cases. Yes. Which we're not bound to follow. I understand. You emphasize we were. Since this is an issue of first impression, why shouldn't you just argue that the plain language of the statute under that, first impression, is that the argument you really want to make to this court? You know, they're the four, like I said, they're the four district courts that really go into the standing issue with depth and analyze it. But then the lower court, and I sent you the, I sent you a letter brief, and it was the same judge, had the same issue before him. And the Maria Corrales case, and it was the exact same Barker court judge, and he reversed his own opinion. And he actually was the one who looked at the language of Section 504 and stated that it was in that language that he was finding that the plaintiff had standing. You're right. I was going to get to it, but, you know, actually what he said was, and I can, do you want me to, I can quote what he said. He said, it was, the issue before him was, well, only the parent could have standing under these, under the retaliation provision. And that was brought up in the Barker case as well, and that it should only, a person with a direct relationship. And what the judge in the Maria Corrales case said, who was the same judge for the Barker case, simply put, there is no basis under the statutory language to allow parents to sue for retaliation, yet bar those students' teachers from doing so as well. Again, the relevant statutory language, and he's speaking to Section 504, is that any individual who has been retaliated against for advocating for disabled students may bring a claim. End of quotes. Thank you. Thank you. We have that case. Okay. So in any event, getting back to where I was, I had my four that I showed you, district court, identical fact patterns. The one case that I thought that was really important was the Blaskes case. That came out of Illinois. And the reason why I thought it was really important, because it differentiates from that teacher suing for discrimination. She had two claims, one for discrimination, the second one for retaliation. They said, no, she can't sue for discrimination. She's not handicapped. She's not a beneficiary. Then they went into elaborate analysis of what does it take for a teacher to sue for retaliation. And they said she engaged in a violation, and there was causation. And they set the standard, and they said, therefore, the teacher could sue for retaliation. Certainly there's no argument about that, and that that occurred in the Barker case. And like I said, he reversed himself. What I do want to point out to you is what, where the defense went in this case. And there was a lot of confusion about the distinction between one, retaliation, and two, discrimination. The case that they heavily relied on was Discovery House. And they are saying because of Discovery House, she is not allowed to sue under Section 504. And what happened in Discovery House was it was a for-profit agency. They were suing for, I believe, loss of profits because of a building permit. It had absolutely nothing to do with retaliation. And they said, well, you know, you are not a handicapped person, so you can't sue for discrimination. And they repeated this Discovery House all through their answering brief. Well, we're not suing for discrimination. We're suing for retaliation. As you said, the language is very broad in the statute itself, and then we have all these underlying cases. They did not show one case where a teacher couldn't sue for retaliation. There's not one out there. All right. We noticed that in your briefs. Okay. Great. You know, I want to conclude with the fact that I believe there's policy considerations in this case. And the fact is that this statute section, you know, I forgot to go into Title II. Can I just back up a second? Yes, you have seven minutes left. Okay. I'm sorry. But he also dismissed your case under Title II. And my argument under that was that he used the Zimmerman case. And the Zimmerman case, the plaintiff in that case had an eye disability. And he should have filed his case under Title I, which is for discrimination. Discrimination against a disability. He filed it under Title II because he forgot to file with the EEOC. And it was this court who said, no, you know, your statute was Title I. You can't get in the back door when you couldn't get in the front. What you forgot to do was file that charge, and you must file the charge. That case is really completely different than the Barker case. And in my brief, I noted that there is a case, it's Wexel, I believe it's the First Circuit, that said there was another parent going forward under the retaliations. The Second Circuit case, yes. Wexel versus Board of Education. Yes. Where the retaliation case was allowed under both Title II and Section 504. And as the lower court judge in the Barker-Corrales case said, should make no difference whether it's a parent or a teacher. Just in conclusion, I want to say that in 1978, that's when Congress added that anti-retaliation clause. Anti-retaliation regulation to Section 504, and that was to strengthen the act. And that certainly we want to encourage these teachers to come forward. And we do, we want the same civil rights for the teacher who is the first line of defense with that child. She's the first person that's going to see if something's wrong. And if a parent can sue under Section 504, we should not eliminate teachers from this. And there's another thing that occurred here. And that was that the defendant, Riverside County Office of Education, took federal funds under Section 504. And then they discriminated against these children, the beneficiaries of the statute. They then retaliated against the teacher who courageously came forward. And now they say, well, you can't sue us under this statute. I mean, something is just fundamentally wrong with that. As a matter of fact, if you read their brief, they don't want to be in federal court at all. And I think, you know, when you take federal funds, you opened your door to that. So the other thing is that we have an inconsistent decision now in the lower court on this issue. And the second thing I'm sure you didn't miss was that the Barker lower court in the Corrales decision pointed out that there was an unpublished decision from this court in 2005, Sweet v. Talagern. And this court conferred standing to a school psychologist. Unfortunately, because it was unpublished, we're here again. And, you know, the last thing I want to say was one of the cases that I cited, Ross v. Allen, it was about a school psychologist that was retaliated against, was decided by a district court all the way back in 1981. And I just think it's a real shame that this dismissal happened 27 years later to a school psychologist. It's a real shame to Susan Barker after she courageously came forward and fought for those children. Let me ask you this. Most plaintiffs in Barker's position seem to have only made claims under 504 of the Rehabilitation Act, but not under Title II of the ADA. Now, what's the reason for that? I mean, I think that they have the right to go forward like that, and as you recall, the Office of Civil Rights investigated and found liability under both statutes, but because it's not going to change the actual outcome or her compensatory damages, there's really no need to. All right, we'll hear from the county of Riverside. Thank you. Good morning, Your Honors. May it please the Court, I'm Mark Thompson representing the Riverside County Office of Education. And I'm going to actually deviate from my plan today and address some of the specific points that counsel has made concerning all of these district court cases. Well, you know, let's just look at this thing, you know, from a broader perspective. The language in 504 is certainly broad enough, when we talk about any individual, to say that there is no liability under Title II of the ADA. I mean, there's no reason to give standing to a teacher who comes in and advocates for the student. Well, that's correct, Your Honor, it is quite... What's wrong with that? Who else is going to do it? Well, it is quite broad language, Your Honor, and what we're forced to do in that case... Well, what's wrong with that? What's wrong with that, Your Honor, is that the precedent in the Ninth Circuit and the precedent... Okay, just tell me what's wrong. Why shouldn't the teacher who's there with the student, the teacher who's trained to deal with students who have these handicaps, and who believes that the student isn't getting the proper care and education, why shouldn't that teacher be permitted to be an advocate for that student? Well, it's quite simple, Your Honor, and that's because the remedy sought in these types of cases bears no direct benefit upon the intended beneficiaries of the statute, the disabled students. And this case is about money damages in the pocket of a teacher. Well, that's because the teachers are discouraged from standing up for the students. They're afraid of being retaliated against. There are quite a few different other schemes under which a teacher or an employee can bring an action in an employment case, and 504 is not one of them, like Title II cases, as determined in the Zimmerman case, which was decided by this Court on an inputs and outputs theory. But the Zimmerman case dealt with employment discrimination, not with retaliation. Isn't it the opposite? It isn't, Your Honor, because in alignment with this Court's determination in Bay Area Research, this Court determined that Section 504 should be construed consistently with Title II. And this Court did an exhaustive analysis of inputs and outputs in Zimmerman to say that employment is an input into the federal program, whereas these statutes are intended to benefit the recipients of the services, the outputs. And so under Bay Area Research, in combination with Zimmerman, we can infer that because there is no direct benefit to any disabled person from any of these teacher cases, they don't follow along the lines of the theme that's readily evident, both in the Ninth Circuit and in every other circuit that's addressed this issue. Assuming we disagree with you about Zimmerman, is there any Ninth Circuit case directly in point here? Well, there's nothing directly on point. Nothing directly on point. So we may look at the plain language of the statute, as Judge Pregerson pointed out. Give this plaintiff standing. Well, I would suggest that the Court consider its holding in Zolan, in which a non-disabled plaintiff was allowed to sue under Section 504 only because it was seeking to receive reimbursement of money that it expended on behalf of disabled persons. And the same theme appears in all of the other circuits that address this issue, the direct benefit to the disabled person. That's what 504 is all about. 504 is not intended to address employment actions, as would be a whistleblower claim. And what was the purpose of amending the statute in 1978? Wasn't it to protect these children and give it added opportunity for people to point out what was happening? Well, that's exactly correct. But if the Court takes a look at all of the suggestive authority from the other circuits, every one of those circuits is subject to a whistleblower claim. And in all of those cases, even the teacher cases rely on the theme that, for example, the Weber case, a parent case. The proposed remedy in that case would directly benefit the child. Well, the answer to your question was, what's wrong with that? I haven't heard the answer to that. Well, maybe I should step back to the previous question. The statute says no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceedings or hearing under this chapter. Well, I should step back to your previous question, Your Honor, which is more simple. What's wrong with the any individual language? And I think to answer that question, you can follow some of the cases that are cited. This is plain English. Well, we go back to the Trafficante case from the Supreme Court where a non-minority plaintiff was allowed to sue under Title VI, not because he's any person aggrieved, but because the, even the non-minority plaintiffs received some benefit under the statute. And the Supreme Court really was the first one to propose this theory that under all of these protective statutes. You don't think that teachers get a benefit under this? They become teachers in this field because they want to help these kids, huh? And so if they're, if they're permitted, without fear of acting as advocates, you know, make a charge, testify, assist, participate in any manner in any investigation, huh? They've got standing. If they're retaliated against, so they're getting a benefit out of it. And that's the intangible benefits of being a teacher. You're helping people. So the question actually goes beyond just the question of standing. It addresses the remedy, and clearly Section 504 was intended to benefit disabled persons. And where a non-disabled individual. That's what does it. It benefits disabled persons by telling us that any individual, you know, who has a problem with the way these kids are being treated, you know, is got standing. And that person can't be, I don't know if the word retaliated is here or not. I don't see it that quickly. But, I mean, that's the benefit to the child. We've seen, you know, this isn't the first case we've had involving these statutes. And you've indicated we have no direct Ninth Circuit authority. I don't know why we should be forced to follow the First Circuit in Weber if we can read the plain language ourselves. Well, I agree with you 100%, Your Honor. And that's the problem with what ultimately is the settled good decision, which on the standing issue is not considered to be a Ninth Circuit opinion, but is relegated to the weight of a district court opinion on standing anyway. Settled good relied on Weber rather than looking at the Zolan case. They considered Zolan, offhandedly rejected it, and looked at Weber, which was not even a teacher case. It was a parent and child case. Well, it's not if you look at the grand scheme of all of these cases where every one of the circuits that have decided a 504 case like this for a non-disabled individual has done so in light of the requirement that the benefit, the remedy directly benefit a disabled person. And these are the intended beneficiaries of the statute, not employees. There are other schemes under which employees can seek redress in the courts, Title I, Section 1983. What does the settled good case tell us? Well, settled good, if we step back to the district level, which is what counsel expects us to do, settled good tells us that a teacher can see what a 504. You know, we've got very, very good district judges. And I agree with that, Your Honor. You know what my law professor, Berkeley, said? If he were the appointing authority, and I think it's a good idea, you put the best judges on the district court. See? That's what you do. And I agree with that 100%. They're right there. They know what's going on. They're dealing with reality. So don't denigrate because it's a lower court or a district court. Well, Your Honor, that was not my intent, but the point of settled good is... But it says, you know, that case tells us that the granting standing of the Rehabilitation Act, that granted standing of rehabilitation to a teacher whose teaching contract was not renewed after she advocated for her students with disability. And in doing so, settled good relied primarily on the Weber case from the First Circuit, which was a parent-child case where there's a direct benefit from the remedy sought to the disabled individual. It's a clear factual difference. Whatever it is, that's what this case holds. Now, that same theme appears across the other circuits. I know people sue under the Americans with Disability Act. I'm sorry, Your Honor. Why are the suits only brought under 504 and not under the ADA? Well, in this context, an employment claim under the ADA would be under Title I. There are requirements to exhaust administrative remedies, which arguably were not met in this case. There are Eleventh Amendment immunity issues where the county office would be immune to a Title I suit. And we believe, quite frankly, that that's the reason that this case chose to go in the direction of Title II and 504. Now, if you look at the Corrales case, which is recently being cited. Well, you say that under Title, under the ADA, there are immunity issues? That's absolutely true under Title I, Your Honor, not for Title II, but for Title I. I'm talking about Title II. Well, Title II has been clearly held by this Court in Zimmerman that it doesn't apply in the employment context. And we're talking about an employment case today. We're not talking about harm to children. We're talking about an employment case where the plaintiff is a non-disabled plaintiff seeking a remedy that has nothing to do with benefiting children. She doesn't work for the county office anymore. She's not seeking any kind of injunctive relief that would change the system and benefit the kids. She's looking for money damages. And there is no precedent that allows money damages for a non-disabled plaintiff in a 504 case, none, where the remedy does not directly benefit the disabled individuals that are the intended beneficiary of the statute. This remedy is going to remedy disabled individuals because teachers won't be afraid to go to court. They won't be afraid of coming forward. You know, it's the teachers that are in the front lines educating. The administrators are back there worrying about when they're going to get the next new rug for their offices or where their air conditioning isn't working. And, Your Honor, the important thing about that is there are adequate remedies outside of the framework of the intent to benefit children. There are adequate remedies outside of the framework of the intent to benefit disabled children that apply to teachers and every other kind of employee that are faced with these situations. Whistleblower claims, 1983, either for injunctive or directly against officers under Ex parte Young. Title I claims can apply. Title V claims can apply. None of these were brought in this case. I take that back. The whistleblower claim at the state level was brought and then later dismissed. But Barker couldn't bring her claim under Title I because she's not claiming discrimination. Well, furthermore, I think it's more important that Barker couldn't bring the case under Title I because of 11th Amendment immunity and because there was no exhaustion of administrative remedies. So she didn't seek to come under Title I. She sought to come under Title II. And that's correct. And Title II does not apply under the Zimmerman holding in any employment context. Understanding position. Okay. Now, what's interesting in the Corrales case is that same plaintiff's attorneys, same judge, different outcome. Now, what was different about that case? They didn't try the Title II route. They went with Title VI and alleged a lot of racial discrimination issues in addition to the 504. And what's telling is the defense that was raised in that case focused solely on failure to exhaust administrative remedies, which the court found had been exhausted, and also the simple fact that the plaintiff was neither a racial minority or disabled. The defense in Corrales raised none of the issues that have been raised in the case before you today, and that's a perfectly good explanation for why Judge Larson made a different decision in the case. And I do have to take issue with counsel's contention that he reversed himself. It's just not the case. However, I think it's clear that the real difference here is we're dealing with an employment case, but where the remedy does not benefit any disabled people. And in all of the case law from the other circuits, there is a direct benefit to disabled persons who are the intended beneficiaries under Section 504. That does not exist in this case. In this case, we've got one person who would benefit from this lawsuit, and one person alone. She is not a disabled child, and she is not eligible for protection under Section 504. Okay. Thank you very much. Sure. All right. This matter will stand submitted. But she wanted to come back. Oh, you want to come back? Yes. All right. Are you a school teacher? Me. Were you? A long time ago. That's good. 1970s. It's not so long ago. I just want to say, as the defense gave in his argument, he was again confusing the issue as to whether she is suing for discrimination or is she suing for retaliation. If she's suing for discrimination, it has to be some sort of an association with the disabled person, like in GLAD. They gave sign language interpreters, and then they wanted to be paid back, so there's an association. But when you look at retaliation, this is a suit in your own right, in your own individual capacity. The best case for this was Hoyt v. St. Mary's, 8th Circuit, 1983. The plaintiff was suing on behalf of a patient in a coma in a hospital under Section 504. The court said, you cannot sue for that patient. You do not have any type of relationship with her. However, you can sue in your own individual capacity for your own damages for retaliation. That really should clear this up. The case is kind of like, it's almost like you're being on a merry-go-round when you read these cases. It's the same cases that are being cited over and over by the same courts. Weber was about a parent, but she was suing in her own individual capacity. The lower court, when he was deciding the Corrales case, he used the Sturm v. Rocky Hill, and he used Weber. And I want to make it very clear, Ms. Corrales was retaliated against, and she is suing for a perjury. She is suing for personal damages for that wrong. It's a three-pronged test. One, you put that in your brief. I'm getting tired. I appreciate those sub-senior moments. You engage in a protected activity. Number two, you were retaliated, there was an adverse action. Three, there's a causal relationship. And lastly, always, there's going to be damages. I mean, that's standing. Okay, thank you very much. And we, of course, ask that you reverse the lower court decision in its entirety. You can leave now without worrying about a lapse. The matter will stand submitted, and this Court stands adjourned. Our week's work is completed.
judges: Pregerson, Nelson, Singleton